## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOSE RAMIREZ and JIMMY PIZARRO,
Plaintiffs,

                                  Case No: 1:23-cv-00343-MLB

    v.

VERIZON CONNECT FLEET USA LLC,

    Defendant.

_____.

## PLAINTIFFS' RENEWED MOTION TO TRANSFER VENUE AND INCORPORATED BRIEF IN SUPPORT

Plaintiffs, by and through their undersigned counsel and pursuant to 28 U.S.C. § 1404(a), move this Court to transfer this action to the United States District Court for the Middle District of Florida.

1.      Plaintiffs initially filed this case as an FLSA Collective Action Complaint on January 23, 2023. (Dkt. 1), and Plaintiffs brought this suit in this District because Defendant identified Alpharetta, Georgia as their corporate office location and where Plaintiffs reasonably believe the policies and unlawful pay practices at issue originated from for employee on a national scale. Dkt. 1 at ¶ 59.

2.      To date, however, there have been no persons who have additionally sought to opt into this action.

3.      Prior to Covid, Plaintiffs physically worked from Defendant's offices in Tampa, Florida. (Dkt. 1 at ¶¶ 31, 34.); and thereafter worked remotely reporting

to the Tampa office. Plaintiffs returned or were asked to return to working at least one day per week in Defendant's office in Tampa, Florida. (Dkt. 1 at ¶¶ 31, 35.)

4.      The scope of this lawsuit has dramatically decreased. What was originally intended to be a national collective action is limited to 2 Plaintiffs, both of whom worked at and reported to Defendant's office in Tampa, Florida.

5.      With knowledge that Plaintiffs live in the Tampa area, Defendant mandated that Plaintiffs attend live depositions in Atlanta in an attempt to harass and impose unnecessary costs and burdens on Plaintiffs. Defendant rejected requests that the depositions be conducted via Zoom or at an alternative location, such as Plaintiffs' counsel's office located in Tampa. As this is only a two person case, these costs and burdens are no longer proportional to the needs of this case.

6.      Further, since Plaintiffs worked in/from Verizon's Tampa office, the majority of witnesses hail from Florida and worked in the Tampa office, including Plaintiffs' numerous supervisors, coworkers, HR personnel. Thus, the convenience of witnesses strongly favors transfer.

7.      All the corporate officers and leaders listed on the leadership team on Defendant's website do not work in the Alpharetta, GA Verizon office and are outside this District. https://www.verizonconnect.com/company/about/. Furthermore, no witnesses Defendant lists on its own disclosures are believed to have worked in the Tampa office, or even live in this District.

2

8.      Plaintiffs thus filed a Motion to Transfer, Dkt. 22, which On 10/4/2023, this Court denied without prejudice Plaintiffs' Motion to Transfer, stating in part, "Plaintiffs insist there has been a change of circumstances because, while they "originally intended [this case] to be a national collective action," … But Plaintiffs' complaint continues to assert claims on behalf of a putative class. (Dkt. 1.) Plaintiffs have never formally abandoned such claims." Dkt. 34 at 1-2.

9.      Plaintiffs have since done exactly that, having moved to formally abandon the pursuit of claims on behalf of others similarly situated by withdrawing or dropping the collective allegations. On October 23, 2023, Plaintiffs filed a motion to amend the complaint that removes all FLSA Collective Action allegations and claims. Dkt. 39, 39-1. This motion to amend is still pending.

10.     A plaintiff who seeks to withdraw, drop, or dismiss a class action from a complaint and proceed individually is no different than when a plaintiff as here seeks to proceed individually and drop the collective action claims.  In both scenarios, the action is streamlined and there can be no prejudice to the defendant and the amendment cannot be said to be futile. Plaintiffs cannot merely voluntarily dismiss the collective action or collective allegations, as the required form is to seek to amend the complaint.

11.     Any argument that Rule 15 precludes a plaintiff amending a complaint to drop a class action or collective action which may be apparent to fail

or is not intended to be pursued is patently absurd, nonsense, and contrary to the idea of when justice so requires, and also may then involve ethical concerns.

12.     According to Defendant, a Party should be required to continue to pursue and maintain a rule 23 class action or FLSA collective action even when futile, or beyond the time in which to file for certification, or when clearly not one which could meet the Rule 23 or Similarly situated standards under Section 216b and the *Hipp* 2 stage analysis; and such argument is both illogical and belies common sense. The same would be to compel a lawyer to further litigation that could be an ethics breaks – when the lawyer has no longer the reasonable believe the claims can be supported or no intention of pursuing those claims, as well as when seeking to dismiss or withdraw claims. No plaintiff can be or should be forced to pursue a class action or collective action when either they no longer wish to or doing so would be either futile or likely be denied.

13.     Here, the Parties are deep in discovery, and no others have sought to join. Thus, keeping this case open as a collective action is actually prejudicial to the Defendant and would result in a dramatic enlargement of discovery needed if and when new plaintiffs join this action.

14.     Any new opt in plaintiff, and his or her attorney, must be afforded the equal opportunity to conduct and serve discovery against Defendant as Ramirez and Pizarro have, and where depositions are already concluded, this of course

would be irreparably prejudicial to anyone seeking to join unless the depositions are reopened and then retaken.

15.     In researching cases across U.S. the undersigned has not found 1 single case where a plaintiff was FORCED to continue with a class or collective action when they sought to drop, dismiss or withdraw the same, and all the case law is about challenging and seeking to prevent class and collective actions.

16.     Similarly, if this action is maintained as is, and there is no deadline for people to join, then conceivably Defendant could face 100 new plaintiffs joining on the eve of trial and face a trial of 102 people and demands for depositions of their supervisors, managers, all their records, and turn the apple cart upside down. This would create a huge financial burden on Defendant, and dramatically change the exposure at trial and time needed for trial. Would Defendant then be barred from deposing all the opt in plaintiffs or requesting records from them as well? Of course not.

17.     At the very least, any new plaintiff opting into this action must have the right and opportunity to obtain similar records of their work activities in discovery, along with the right and opportunity to get emails and related ESI from Defendant as the current Plaintiffs here have done.

18.     The complaint was filed in NDGA because Defendant identifies Alpharetta as its principal place of business and potentially claims by persons from

numerous foreign thus suggest this district was the appropriate jurisdiction.

19.     The 2 Plaintiffs here both worked from the Tampa, Florida offices of Defendant and who live in the Middle District of Florida (MDFL).  The majority of witnesses for Plaintiffs also live in the Tampa area or MDFL, and some of Defendant's witnesses live or work in the MDFL.

20.     Three (3) other former sales employees of Defendant have similarly filed FLSA overtime wage claims against Defendant and who worked from the Tampa office, and who as well live in the Tampa area and MDFL. Although Cansler and Atkins worked in a different sales position than Pizarro and Ramirez, that of a sales partner or closer, while Ramirez and Pizarro were BDR, they were all inside sales reps.  Sales partners negotiate and close sales whereas BDR set appointments for the Sales Partners. See *Cansler and Atkins v. Verizon Connect Fleet USA LLC*, CASE # 8:23-cv-2175; (MDFL).

21.     Also pending in the MDFL is yet another case against Defendant filed by a BDR and one time co-worker of Ramirez and Pizarro, Roland Tucker, in the case of *Tucker v. Verizon Connect Fleet USA LLC*, CASE # 8:23-cv-01655-TPB-JSS; (MDFL).  This is yet another one of Defendant's BDR who worked out of the Tampa office alleging unpaid overtime.

22.     Thus, these (3) plaintiffs, and 2 additional cases, all involve solely the Tampa office, what went on at the Tampa office, and where all the relevant and

related witnesses for both sides are predominantly from and who could potentially be called to serve as witnesses even in this case.  Indeed, Plaintiffs seek to have these 3 Plaintiffs testify as witnesses in this action and trial here but all our outside 100 miles and all are located in the Tampa area or MDFL.

23.     From the settled case of *Lauren Garnick, et al.  v. Verizon Connect Fleet USA LLC*, Case No: 8:20-cv-01474, (MDFL), both named Plaintiffs Garnick and Romeo worked in the Tampa office and Plaintiffs would seek to have them testify as witnesses here. This is in addition to the 51 opt ins plaintiffs who joined the *Garnick* case who worked from Defendant's Tampa office and some of whom Plaintiffs will seek to call to testify as witnesses in this action at trial.

24.     Conversely, Defendant's initial Disclosures list 4 witnesses:  3 of those witnesses are all in the Tampa area, while the 4th is believed to be in the South Carolina area, Monica Tyson. Plaintiffs are unaware of *any* potential witnesses that are in this District, and no witnesses have been uncovered from the corporate office in Alpharetta.  Moreover, there is no indication that any of the policies were created or enforced from this Alpharetta corporate office, as all the involved corporate officers and managers were either from the MDFL or outside the NDGA in other locations or offices, including Tampa, Florida.

25.     In deciding a motion to transfer, the convenience of witnesses is the most important factor to consider, and here this factor strongly weighs in favor of

transfer to the MDFL where most of the witnesses are in the Tampa area.

26.     Additionally, no party would be prejudiced if this case were transferred as all parties are already present in the requested transferee District.   In fact to the contrary, given that Defendant is seeking to transfer and thus eventually consolidate the claims and case of *Cansler and Atkins v. Verizon Connect Fleet USA LLC*, CASE # 8:23-cv-2175 (MDFL) by filing a motion to transfer that case to this District, Exhibit 1; Dkt. 45 at 11. Considering that the *Tucker v. Verizon Connect* case is also pending in the MDFL, neither of which have yet to progress into discovery, transferring *this* action to the MDFL makes the most logical sense, is in the best interests of all parties, and for judicial economy. Certainly, more so than 3 more plaintiffs and 2 other cases being transferred here where there will be 3 new plaintiffs who outnumber the original 2, and an entire need to reset all deadlines and start discovery anew.

27.     As stated in every notice authorized to be sent to class members or collective members in FLSA actions we have seen and been a part of the Notice always tells the recipients they have the right to proceed on their own and NOT join or opt into that case, including the conditionally certified case of *Garnick v. Verizon Connect,*  Case No: 8:20-cv-01474 MDFL, with the Notice approved by Attorney Braun and Verizon Connect also telling people like Cansler and Atkins and Tucker

they can always pursue their own claims.[1]

28.      Accordingly, Plaintiffs respectfully request this Court transfer the instant action to the United States District Court for the Middle District of Florida, Tampa Division, where it can as well be consolidated with the *Tucker v. Verizon Connect* and the *Cansler and Atkins v. Verizon Connect* cases. Afterall, Defendant is looking to bring Cansler and Atkins here, and thus as there will be a need for an entire reset anyway, the prudent, practical and economic factors as set forth below and more fully argued below all scream for these cases to be consolidated in the MDFL. The Tampa, Florida office is where the policies and practices at issue occurred and the key and potential witnesses are all located in the Tampa area and can be subpoenaed to appear.

## ARGUMENT

### A. Legal Standard

A district court is vested with the discretion to transfer a civil action to any other district or division where the case may have originally been brought "for the

---

[1] Just as class members can opt out of a rule 23, absent a person affirmatively opting into a collective action, that person always retains the right to proceed in their own action and case. Indeed, the notice on conditional certification, always tells the plaintiffs that they have the right to not opt in and can pursue their own case. See Notice from *Garnick* case, Exhibit 2, approved by the Court MDFL at Dkt. 110. Verizon also agreed with this Notice, telling BDR like Cansler and Atkins, and Tucker, they can pursue their own claims. The notice read in part:
"C You May Choose Not to Join the Lawsuit
You are not required to join the lawsuit. It is your choice if you wish to join this case. By doing nothing, you retain your right to bring your own separate lawsuit against Verizon Connect. However, if you do not participate in the lawsuit, you will not be eligible to receive any portion of any settlement, recovery, or court awarded damages if obtained by the Plaintiffs, and the statute of limitations under the FLSA, a maximum of 3 years to claim or recover wages, will continue to run against any overtime or minimum wage claim you could have asserted against Verizon Connect." Exhibit 2 at 4.

convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. §

1404(a).  "Section 1404(a) is intended to place discretion in the district court to

adjudicate motions for transfer according to an "individualized, case-by-case

consideration of convenience and fairness."" Stewart Org., Inc. v. Ricoh Corp.,

487 U.S. 22, 29, 108 S. Ct. 2239, 2244 (1988)(quoting Van Dusen v. Barrack, 376

U.S. 612, 622 (1964)).  "The purpose of transfer under § 1404(a) is to prevent the

waste of time, energy and money and to protect litigants, witnesses and the public

against unnecessary inconvenience and expense." Montgomery v. Risen, No. 15-

20782-CIV, 2016 U.S. Dist. LEXIS 183850, at *2 (S.D. Fla. Jan. 25, 2016).

 As a threshold matter a court must determine whether the case may have been

brought in the desired district [*4] of transfer. *Meterlogic, Inc. v. Copier Solutions,*

*Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002)."Once a court finds an action could

have been brought in the transferee forum, the court must weigh various factors . . .

to determine if a transfer . . . is justified." *Elite Advantage, LLC v. Trivest Fund IV,*

*L.P.*, No. 15-22146, 2015 U.S. Dist. LEXIS 110796, 2015 WL 4982997, at *5 (S.D.

Fla. Aug. 21, 2015) (citation and internal quotation marks omitted)." Soldevilla v.

Henkel Corp., No. 21-cv-62573-GAYLES, 2022 U.S. Dist. LEXIS 236957, at *3-4

(S.D. Fla. Oct. 25, 2022).

 In ruling on a motion to transfer, a court is to consider the following factors:

"(1) the convenience of the witnesses; (2) the location of relevant documents and

the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).  As this case could have initially been brought in the Middle District of Florida and as the weight of the factors favor transfer, this action should be transferred to the Middle District of Florida.

## B. This Case Could Have Been Initially Brought in the MDFL

Plaintiffs' claims are based on the alleged violation of a federal statute, specifically, the Fair Labor Standards Act (FLSA), 29 USC 201 *et seq*.  (Dkt. 1). Thus, any US district court would have federal question subject matter jurisdiction over Plaintiffs' claims.  28 U.S.C. §1331.  Further, the Middle District of Florida has personal jurisdiction over this action because the Defendant continuously conducts substantial business in Tampa, Florida at fixed offices, and all of the damages at issue occurred in Hillsborough County, Florida.  Lastly, venue is proper to the Middle District of Florida pursuant to 28 U.S.C. Sec. 1391(b) since the parties reside in the Middle District of Florida and because a substantial part of the events giving

rise to the claims occurred in the MDFL. Thus, the Plaintiffs could have initially brought this suit in the Middle District of Florida.

## C. The Balance of the Factors Favor Transfer

Having established that this case could have been brought in the MDFL, this Court is next required to weigh the following transfer factors.

### 1. The Convenience of the Witnesses Strongly Weighs in Favor of Transfer

"The most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses." Insuracorp, Inc. v. Am. Fid. Assurance Co., 914 F. Supp. 504, 506 (M.D. Ala. 1996). A key issue in Plaintiffs' claim is the number of hours they worked. Plaintiffs claim that they worked unpaid overtime in Defendant's Tampa, Florida office location and from their homes in the Tampa area while working remotely due to Covid. (Dkt. 1 at ¶¶ 31, 34, 35). At all times Plaintiffs solely reported to Defendant's Tampa office. In response to discovery requests, Defendant identified the following as being Plaintiffs' supervisors: Jeff Hanna, Michael Stratton, Richard Lenz, Amber Gene Lang, Creig Bent, Juan Antonio Correa, and Brian Calhoun. Thus, Plaintiffs' managers or supervisors also worked in Tampa, making the MDFL Tampa Division far more a convenient location for them to be called to testify than here.

The relevant witnesses who could corroborate the hours Plaintiffs worked or that they worked similar hours all worked with Plaintiffs in Tampa. Potential

witnesses include the named plaintiffs in *Cansler and Atkins v. Verizon Connect Fleet USA LLC*, CASE # 8:23-cv-2175; (MDFL); *Simms v. Verizon Connect Fleet USA LLC*, CASE # 1:22-cv-03205; (NDGA); *Tucker v. Verizon Connect Fleet USA LLC*, CASE # 8:23-cv-01655-TPB-JSS; (MDFL). From the case of *Lauren Garnick, Tshacha Romeo and Corey Hanvey, Individually, and on behalf of all others similarly situated, v. Verizon Connect Fleet USA LLC*, Case No: 8:20-cv-01474, (MDFL), there are 53 potential witnesses who also worked for Defendant in the Tampa office; two of the named plaintiffs and 51 opt in plaintiffs. That alone is 57 potential witnesses who worked from Defendant's Tampa office and the majority of whom are likely to still live in the Tampa area.

Since this case was filed, 3 other Plaintiffs (Tucker, and then Cansler and Atkins) who were former inside sales reps have commenced claims as they were permitted to do under the FLSA from where they live and work and where all the witnesses would be located from, occurred more recently and after this case was commenced.   None of these 3 plaintiffs would wish to have to fly and travel to this District for depositions, and eventually having to appear for a trial in this district as the same would create economic burden or even hardship on them, as well as causing them to be away from families if and when a trial occurs.

Similarly, Defendant's Initial Disclosures list 4 witnesses, most of whom are in the Tampa area. Two are the Plaintiffs, who live in the Tampa area, and the 3rd is

Jeff Hanna, who is a current employee who works at Defendant's Tampa office. Defendant's 4th witness, Monica Tyson, is believed to be in South Carolina and did not work in the Alpharetta office. Thus, there are 64 potential witnesses who worked from Defendant's Tampa office, the majority of whom are still likely in the Tampa area. Conversely, there are no witnesses that live in the Atlanta area.

As per Google Maps, accessed on Nov. 1, 2023 the distance between Defendant's Tampa office and the federal courthouse in Tampa is 15 miles and takes approximately 25 minutes to drive. Conversely, the distance between Defendant's Tampa office and the federal courthouse in Atlanta is 449 miles and is, using the fastest route available, approximately a 6-hour 38 minute drive. Thus, it would be more convenient for potential witnesses to travel to Tampa as opposed to Atlanta in the event of a trial.

Accordingly, over 60 potential witnesses who are likely still living in the Tampa area and whereas there are no potential witnesses in the Atlanta area, it would be more convenient for the vast majority of witnesses to testify in Tampa, as opposed to Atlanta. Thus, this factor weighs strongly in favor of transfer.

"Assuming all witnesses are equally crucial to the respective [*10] sides, the fact that Plaintiff is better able to procure the attendance of her witnesses in the Middle District because they are under her control, and Defendants are virtually unable to procure the attendance of theirs in this district, is a critical consideration.

<u>Gonzalez v. Pirelli Tire, LLC</u>, 21 Fla. L. Weekly Fed. D449 (U.S. S.D. Fla. February 21, 2008)",

Plaintiffs intend to rely upon numerous witnesses and former coworkers from the Tampa office, all of whom are in Florida and mostly in the Middle District of Florida.  See Plaintiffs' Second Amended Initial Disclosures.  Exhibit 3.

### 2.    The Location of Relevant Documents Weighs Slightly in Favor of Transfer

Plaintiffs work was all from the Tampa office and most of the relevant documents and sources of proof are likely to be in the form of ESI and therefore are accessible from any location that has internet access.  However, to the extent there are any documents or sources of proof that are not in electronic or ESI form, they would be located at Defendant's Tampa location, thus weighing slightly in favor of transfer.

### 3.    The Convenience of the Parties Weighs Strongly in Favor of Transfer

This factor weighs strongly in favor of transfer as well as all of the parties can be said to be "at home" in the transferee district.  Again, Plaintiffs worked for Defendant at Defendant's Tampa office location, then remotely from their homes within the transferee district, and later on, worked under a hybrid model working part of the week remotely, and part of the week at Defendant's Tampa location. (Dkt. 1 at ¶¶ 31, 34, 35).  Similarly, Defendant has regularly and continuously

conducted business in the Middle District of Florida through their Tampa office location. Id. As all of the parties are "at home" in the Middle District of Florida, this factor weighs strongly in favor of transfer.

Again, as Defendant is seeking to find a means to consolidate the *Cansler and Atkins v. Verizon Connect* case by a Motion to Transfer here Exhibit 1, (and assume that eventually Defendant will move to transfer the *Tucker* action as well when they are served with the complaint) the same anyway which would effectively and necessarily cause an entire case reset and the need to completely restart discovery related to their work activities. Depositions would need to be retaken or delayed until underlying discovery and records can be obtained. With 3 new Tampa based plaintiffs of the total 5, all of whom are based in Tampa, the majority of all witnesses, issues, occurrences and the policies and practices all involved the Tampa office. Thus, transfer to the MDFL is both logical, practical, and judicially economic. Then the cases would more easily be consolidated.

### 4. The Locus of Operative Facts Weighs in Favor of Transfer

This factor weighs in favor of transfer as the operative facts giving rise to Plaintiffs' claims happened in the Tampa, and the same for the claims of Cansler, Atkins and Tucker. Plaintiffs contend they regularly worked more than 40 hours per week for Defendant within the transferee district without being paid their full overtime compensation. (Dkt. 1 at ¶¶ 31, 34, 35, 60, 61). Thus, as the operative facts

took place in the transferee district, this factor weighs in favor of transfer to the Middle District of Florida. Indeed, throughout this case, and more recently related to the 30b6 and discovery arguments, Defendant argues that all the issues and discovery should be related to what happened in the Tampa office.

### 5. The Availability of Process to Compel the Attendance of Unwilling Witnesses Weighs in Favor of Transfer

This factor weighs in favor of transfer as the majority of witnesses would be located in the transferee district. The Plaintiffs cannot subpoena witnesses outside 100 miles to appear for trial. As all witnesses live and work in the Tampa area, Plaintiffs will for certain have difficulty getting witnesses to voluntarily travel to this Courthouse to testify at trial because of the time and costs involved.

To the extent Plaintiffs seek to call one or more unwilling witnesses to testify at trial from Florida, this Court nor a subpoena can compel them to appear in this District. Thus, this factor weighs heavily in favor of transfer to the MDFL. Defendant would of course as they did in this action, try to oppress the Plaintiffs by taking their depositions in this District, recalling that Plaintiffs sought to get Defendant to take their depositions in Florida, or remotely, and Defendant opposed, and they had to incur the financial impact of flights and other travel. Naturally, Pizarro and Ramirez are concerned over the costs of appearing for a trial in this district.

### 6. The Relative Means of the Parties Favors Transfer

The means of the Plaintiffs compared to that of the Defendant favors transfer. "*Legg*, 2015 U.S. Dist. LEXIS 28031, 2015 WL 13753742, at *3 (relative means of the parties "strongly weighs in favor of [plaintiff]. He is an individual, living and working in Florida, whereas Quicken Loans is 'the nation's largest online banker' [**26] with a strong national presence")." <u>Fruitstone v. Spartan Race Inc.</u>, 464 F. Supp. 3d 1268, 1283 (S.D. Fla. 2020).   Similarly, the Plaintiffs here are two individuals living and working in Florida.   On the other hand, Defendant is part of an international[2] company that purchased Fleetmatics for $2.4 billion dollars in 2016. (Dkt. #1 at ¶ 2.)   Conversely, the purchases of Plaintiffs are not measured in billions of dollars.

The relative means of the parties here favors transfer as Defendant is better able to absorb any costs and expenses and as Defendant's costs and expenses would be less than that of Plaintiffs.   Defendant is a large corporation with offices across the world and is already present in both Atlanta and Tampa.   There is little cost difference to Defendant if the case proceeds in Atlanta versus Tampa. On the other hand, Plaintiffs are not an international corporation, they are two individuals who are located in the Tampa area and thus, there is an increased cost and expense to them if this case continues in Atlanta.   Regardless, it has already been made clear

---

[2] https://www.verizonconnect.com/company/about/ (accessed 5/1/23)

that some of the witnesses Defendant is relying upon to testify in this matter are from Tampa and are not in Atlanta or the NDGA.

Defendant insisted that Plaintiffs be deposed in Atlanta as opposed to being deposed over a video teleconferencing system such as Zoom or at a location in Tampa or Jacksonville. Defendant insisted on deposing Plaintiffs in Atlanta in order to run up the cost and expenses on Plaintiffs. Plaintiffs were hourly paid employees of Defendant, (Dkt. 1 at ¶ 42). Thus, to attend a live deposition in Atlanta and departing from the Tampa area, Plaintiffs had to take time off from work, arrange and purchase airfare to Atlanta. Under any scenario, Plaintiffs would of course have to take time off from work to attend their depositions, but where the depositions were held in Atlanta, the cost and time of travel (including time off from work) was greater for Plaintiffs than if the depositions were allowed to proceed in Tampa. As for Trial, Plaintiffs may be required to be away from their families for upwards of 5 to 6 days, both who have a dependent minor child or more, as well as incur hotel charges, travel costs and expenses all of which would be substantially mitigated if they could attend trial in the MDFL. They may also more probably have family who can support them by attending the trial live. As the corporate Defendant here has significantly more means than the Plaintiffs, this factor weighs in favor of transfer.

### 7. The Forum's Familiarity with the Governing Law is Neutral

Plaintiffs bring their claims pursuant to federal law, specifically the FLSA.

Thus, a federal court in the Middle District of Florida is equally familiar with and capable of applying federal law as a court in the Northern District of Georgia, and vice versa. This is especially true here as both courts are within the same Circuit and are both bound by the same Eleventh Circuit precedent. Plaintiffs' claims are not based on any state law, whether it is Florida or Georgia law. Thus, neither this Court nor the transferee court would be asked or required to apply the law of a foreign state. Accordingly, as two different district courts within the same Circuit are equally capable of applying federal law, this factor is neutral.

### 8. The Weight Accorded a Plaintiff's Choice of Forum Favors Transfer

Plaintiffs initially filed this action in the Northern District of Georgia under the belief that it would be a national collective action and thus this Court would undoubtedly have jurisdiction over all opt-in plaintiffs as Defendant's corporate offices are within this district. However, since the filing of the Complaint on January 23, 2023, no consent to join forms have been filed and no opt-in plaintiffs have joined this case, thereby significantly reducing the scope of this case. Further, Plaintiffs have now sought leave of Court to amend the complaint and formally abandon all collective action claims. DE 39.

With the knowledge that both Plaintiffs live in the Tampa area, Defendant insisted that Plaintiffs be deposed in person, and in Atlanta, for the purpose of imposing costs and burdens on Plaintiffs. Further, if the case were to proceed to

trial, the Plaintiffs and most of the witnesses would also be required to travel from the Tampa area to Atlanta.  As this is now only a two plaintiff case, both of whom live in the Tampa area, these costs are no longer proportional to the needs of the case. As all of the Plaintiffs and most of the potential witnesses live in the Middle District of Florida, this factor favors transfer.

Discovery has revealed that none of the policies and unlawful pay practices at issue were created from or enforced by officers and managers in the Alpharetta office or this district, and to the contrary, the same were all crated or enforced in the Tampa office, the MDFL. When the case was commenced, there was a possibility of plaintiffs joining this action from 4 other states and locations, and even remote workers and foreign citizens and that there might be company policies and procedures created by the corporate office and enforced from the corporate office in Alpharetta.  This again has turned out by discovery not to be the case. Defendant's key HR witness Monica Tyson is from South Carolina and did not work at the Alpharetta office.  Jeff Hanna, and all other managers of Plaintiffs, and their managers or superiors, all worked from the Tampa office and are not living in this district nor associated with the Alpharetta office.

### 9. Trial Efficiency and the Interests of Justice, Based on the Totality of the Circumstances is Neutral

Defendant may argue that this case should remain in this District because of the settled case of *KHIRY MULLINS and ADRIAN DIAZ, v. VERIZON CONNECT*

*FLEET USA LLC and VERIZON CONNECT INC.*, Case No: 1:21-cv-4697-MLB (NDGA).  The *Mullins* action is dissimilar in that the parties in the *Mullins* action have already reached a settlement while this case is still being actively litigated, and that involved claims specific to 2 other offices in different districts.  Further, the *Mullins* action was a Class action based on North Carolina and Illinois state laws and the classes are composed of Defendant's ISR that worked or reported to Defendant's offices in North Carolina and Illinois.  In contrast, the claims of the two plaintiff BDR here are based on the FLSA and are made by BDR that never worked in Defendant's North Carolina and Illinois offices.

This case is more similar to the case of *Lauren Garnick, Tshacha Romeo and Corey Hanvey, v. Verizon Connect Fleet USA LLC*, Case No: 8:20-cv-01474, (MDFL). Like this case and the *Mullins* case, the *Garnick* action again involved claims of Defendant' ISR (ISR includes BDR like the Plaintiffs and Closers) not being paid their full overtime compensation.  However, both this case and the *Garnick* action contain allegations of violations of the FLSA whereas the *Mullins* case alleges violations of state law.  Further, both this case and the *Garnick* case contain plaintiffs that worked at Defendant's office in Tampa.  The *Garnick* case was litigated in the Middle District of Florida and was litigated more fully than the *Mullins* action.  Thus, any argument that this case should remain in this District since this Court is already familiar with the facts of a similar case should be rejected as

the MDFL is equally, if not more so, familiar with the similar factual allegations the two Tampa based Plaintiffs here assert.

### D. Conclusion

As this case could have been filed in the MDFL and given the since filed 2 new cases and 3 plaintiffs who now have actions pending in the MDFL who Defendant seeks to consolidate and transfer, all such factors weigh in favor of transfer of this action and at this juncture to the MDFL. What makes more sense logically, economically, and judicially at this time: bring 3 new plaintiffs and 2 other cases to this district to consolidate here and start anew or transfer this case to the MDFL where it can be easily consolidated with the *Cansler* and *Tucker* actions. Defendant is arguing out of both sides of its mouth, as it has argued to transfer *Cansler* here, and assumingly would be soon doing the same with *Tucker*, all of which then screams and calls for a total reset and restart of discovery: growing the case by 100% to 160% increase (2 to then 5 plaintiffs). Plaintiffs' counsel may then ease the burden and costs by sharing the workload with counsel for *Tucker*.

No party would be prejudiced by transfer. Defendant cannot articulate any alleged prejudice by this transfer to the MDFL, especially when they have voiced their intentions and argued the *Cansler* action should be essentially consolidated and transferred to be litigated together. The most important factor in deciding a motion to transfer is the convenience of the witnesses, which overwhelmingly here strongly

favors transfer as the vast majority of all potential witnesses are in the Tampa area, while there are likely zero potential witnesses in the Atlanta area. Plaintiffs intend to rely upon the testimony of the other Plaintiffs, Cansler and Atkins, and eventually Tucker, all of whom have yet to engage in any discovery with Defendant, and whom Defendant likewise would seek to depose. Their work records, activities, and emails, etc. all have yet to be discovered, and depositions would need to be reset to account for all this additional record evidence to be obtained. Further, aside from these newly identified witnesses and Plaintiffs, Tucker, Cansler and Atkins who filed claims well after this case was commenced, and whom Plaintiffs seek to rely upon in this case, all again are in Tampa and the MDFL. Asking any of them to travel to this Court and this district for depositions and for trial means financial hardship and even prejudice to the Plaintiffs here if they cannot get such witnesses to travel here for the trial.

Defendant's assumed objection, as surmised from discussions with defense counsel, is that they believe the Court here is more favorable to them and sympathetic to their position and side of the case as a corporation and corporate defendant and want to gain a tactical advantage. All the factors, especially taking into consideration that Defendant wants the other plaintiffs to be joined here or consolidated here, favor transfer to the MDFL. In discussions with attorneys for Verizon in the *Cansler* action, the defense attorney even told Plaintiffs' counsel that

24

Atkins and Cansler must dismiss their case and opt into this action, as if they are required to. Under the totality of the circumstances, given the 2 new cases in the MDFL that have yet to begin discovery, and Defendant's clear intention to seek to combine these cases, transfer to the MDFL where it could have been filed, is not only the most logical decision, but in all parties' best interests. Further, judicial economy weighs in favor of some consolidation, the same of which is more so better handled in the MDFL than in this district.

While this was originally filed as a Collective Action, no opt-in plaintiffs have joined, and as Defendant has repeatedly pointed in arguing proportionality against the discovery plaintiffs seek: "this is only a two person case", circumstances and facts have changed. Defendant now seeks to join this action with others filed in the MDFL. Plaintiffs have moved to withdraw the collective action allegations. DE 39. Defendant's arguments against suggest that Defendant is actually stipulating to or should be held to stipulate to conditional certification to proceed as a collective action, so that notice can go out to all present and former employees who worked for defendant in the prior 3 years of their rights to join this action.  See U.S.C. §216(b); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001).

Accordingly, this Court should grant Plaintiffs' Motion to transfer this case to the MDFL where it can be more easily, efficiently consolidated with the *Cansler and Atkins v. Verizon Connect* and the *Tucker v. Verizon Connect* cases.

Respectfully submitted November 7, 2023.

/s/ Mitchell L. Feldman
Mitchell L. Feldman
FELDMAN LEGAL GROUP
Georgia Bar No.: 257791
mfeldman@flandgatrialattorneys.com
6916 W. Linebaugh Avenue, #101
Tampa, Florida 33626
Tel: (877) 946-8293
Fax: (813) 639-9376
Attorney for Plaintiffs

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that this document was prepared using 14-point Times New Roman font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed and served via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or parties of record and also via any additional manner noted below.

/s/ Mitchell L. Feldman
MITCHELL L. FELDMAN
Georgia Bar No.: 257791